## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

**LINDA NABAVI and MICHAEL NABAVI,**

      **Debtors.**

_____

**CENTENNIAL BANK,**

      **Appellant,**

v.                             **Case No:  6:13-cv-1176-Orl-36**

**LINDA NABAVI and MICHAEL NABAVI,**

      **Appellees.**

_____

### OPINION AND ORDER

This cause comes before the Court upon Appellant Centennial Bank's ("Centennial") appeal (Doc. 1-1) of the Bankruptcy Court's Order (Doc. 1-2) granting Appellees Linda Nabavi and Michael Nabavi's (the "Nabavi Debtors") Amended Motion for Entitlement of Attorney Fees ("Motion for Fees") (Doc. 1-12).  Centennial filed a brief in support of its appeal (Doc. 10) ("Brief in Support") on October 23, 2013, the Nabavi Debtors submitted an answer brief in opposition to the appeal (Doc. 15) ("Brief in Opposition") on November 27, 2013, and Centennial filed a reply to that answer (Doc. 23) ("Reply Brief") on December 27, 2013.  On May 21, 2014, this Court held oral argument on the appeal.  *See* Doc. 26.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.  Upon due consideration of the record, the briefs, and the oral argument, the Court has determined that the Bankruptcy Court's Order should be affirmed.

**I.**      **Background**

This case arises out of a Chapter 7 voluntary bankruptcy petition filed by the Nabavi Debtors on March 23, 2012.  Doc. 1-4.  In November 2007, the Nabavi Debtors' company, Nabavi Construction,

executed a promissory note for $1.8 million to Centennial's predecessor, Old Southern Bank ("OSB"), and entered into a Second Real Estate Mortgage and Security Agreement ("Mortgage Agreement") with OSB, pledging realty as collateral for the note.  Doc. 10-3 at p. 28.  In March 2010, Centennial became the owner and holder of the mortgage.  *Id.* at p. 24, ¶ 4. On March 7, 2010, after the Nabavi Debtors defaulted on the note and Centennial sued Nabavi Construction and its guarantors in state court to foreclose and recover the amount owed under the Mortgage Agreement, Centennial was awarded a Partial Summary Final Judgment of Foreclosure against Nabavi Construction and its guarantors.  *Id.* at p. 24, ¶ 5.  Thereafter, the Nabavi Debtors filed their bankruptcy petition.

In the "Disclosure of Compensation of Attorney(s) for Debtors" attached to their bankruptcy petition, the Nabavi Debtors disclosed that they had paid their attorneys $3,000.00 in connection with the petition pursuant to a flat fee attorney agreement. Doc. 10-2 at p. 24. Centennial filed a Motion to Dismiss the petition ("Motion to Dismiss"), arguing that it had been filed in bad faith.  Doc. 10-1 at p. 15. Centennial also requested attorneys' fees in its Motion to Dismiss, later claiming that this request was made in error.  *See* Doc. 10-2 at p. 49; Doc. 10-5 at p. 42. The Nabavi Debtors filed a response in opposition to Centennial's Motion to Dismiss, also requesting attorney's fees. Doc. 1-8.

The Bankruptcy Court denied the Motion to Dismiss, after an evidentiary hearing was conducted on December 18, 2012.  Doc. 1-2. On December 28, 2012, the Nabavi Debtors filed a Motion for Entitlement of Attorney Fees (Doc. 1-11), which they later amended (Doc. 1-12), on the basis that they were the prevailing party in Centennial's Motion to Dismiss and pursuant to the Mortgage Agreement, which contains a fee provision, and based on Fla. Stat. § 57.105(7), which makes all attorney's fee provisions reciprocal.  *See* Doc. 10-1 at p. 19; Doc. 1-2. The Nabavi Debtors requested $13,945.00 in fees, plus any additional fees incurred in litigating the fee issues. Doc. 10-3 at p. 21.

Centennial filed a response in opposition to the Motion for Fees, asserting that the Nabavi Debtors were not entitled to attorneys' fees because: (1) there was no federal law which allowed for entitlement to such fees; (2) there was no contractual basis for entitlement to fees because of the foreclosure of the mortgage, which resulted in a merger of the note and mortgage into the state court judgment; and (3) the Nabavi Debtors failed to follow the procedures in Rule 2016(b) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 329 of the Bankruptcy Code regarding the disclosure rules for the compensation of a debtor's counsel. Doc. 10-3 at p. 23-27.

An evidentiary hearing was held on the Motion for Fees on March 7, 2013. Doc. 1-13. During the hearing, Centennial argued that the Nabavi Debtors did not disclose their entire retainer agreement until the hearing, and that a new agreement for fees was needed for certain legal services, but no such agreement had ever been executed. Doc. 10-5 at p. 45-46. On May 20, 2013, the Bankruptcy Court granted the Nabavi Debtors' Motion for Fees, awarding them $15,925.00 for attorney services rendered based on time entries submitted by the Nabavi Debtors, their fees expert who testified that the amount sought by the Nabavi Debtors was reasonable, as well as the attorneys' hourly rates, and that the prosecution of the Motion to Dismiss fit within the fee entitlement paragraph twenty-one (21) of the Mortgage Agreement, which, pursuant to § 57.105 of the Florida Statutes, applied to the Nabavi Debtors. *See* Doc. 1-2. The amount awarded did not include any fees for the expert. *Id.* This matter constitutes an appeal by Centennial of the Bankruptcy Court's ruling on the Nabavi Debtors' Motion for Fees. *See* Doc. 1-2.

## II.    Standard of Review

The district court functions as an appellate court in reviewing decisions of the bankruptcy court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). Legal conclusions of the bankruptcy court are reviewed *de novo*. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Findings of fact are reviewed for clear error. *Id.* "A factual finding is clearly erroneous when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (internal citations and quotations omitted).

## III.    Discussion

On appeal, Centennial argues that the Bankruptcy Court erred in granting the Nabavi Debtors' Motion for Fees because, first, they willfully violated 11 U.S.C. § 329 and failed to comply with Rule 2016 (b) by either failing to supplement their filing or by failing to timely disclose another fee agreement between the Nabavi Debtors and their counsel, failures that preclude an award of attorney's fees and costs. Doc. 10 at p. 9.  Second, Centennial argues that, even if another fee agreement could be considered, such agreement would not provide a basis for a fee award for responding to Centennial's Motion to Dismiss because the contingency provision in the fee agreement is inapplicable.  *Id.*  Third, Centennial argues that the Bankruptcy Court erred in granting the fees based on section 57.105 of the Florida Statutes because there was no contract or statute by which Centennial could have collected attorneys' fees.  *Id.*  Fourth, Centennial avers that the Bankruptcy Court erroneously inferred that Centennial's Motion to Dismiss the Debtors' bankruptcy petition was the functional equivalent of a "collection of Obligations" as that term is used in Paragraphs 19 and 21 of the Mortgage Agreement.  *Id.*  Finally, Centennial argues that the Bankruptcy Court erred in determining that the attorney's time was reasonable because this time included matters that did not involve the Motion to Dismiss.  *Id.*

### A.    Whether the Nabavi Debtors Violated Bankruptcy Attorney Compensation Disclosure Laws Thereby Precluding an Award of Attorney's Fees

When a debtor's attorney is compensated pursuant to Section 329(a) of Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. § 329,[1] which places an affirmative duty on a debtor's

---

[1] Section 329 concerns a debtor's transactions with attorneys and provides:

counsel to disclose all fee arrangements and payments beginning one year before the date of the filing of the bankruptcy petition, the attorney must follow Federal Rule of Bankruptcy Procedure 2016. *In re Ford,* 446 B.R. 550, 554-555 (M.D. Fla. 2011).  This rule requires disclosure of any compensation paid or promised to an attorney for a debtor.  *See* Fed. R. Bankr. P. 2016(b).  Specifically, Rule 2016(b) states:

> Disclosure of compensation paid or promised to attorney for debtor.
>
> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016.  The purpose of this rule mandating disclosure is to protect both the debtor and the creditor, with noncompliance hindering the court's ability to make a meaningful review of an attorneys' request for fees from the bankruptcy estate.  *In re Keller Financial*, 248 B.R. 859, 883 (M.D. Fla. 2000).  Accordingly, an attorney is at risk that all compensation may be denied for failing to disclose such compensation.  *In re Ostas*, 158 B.R. 312, 321 (N.D.N.Y. 1993).

---

a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
        (1) the estate, if the property transferred—

                (A) would have been property of the estate; or
                (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

        (2) the entity that made such payment.

Centennial contends that Rule 2016(b) was not followed here because only a $3,000.00 flat fee arrangement between the Nabavi Debtors and their counsel was disclosed, which turned out not to be the full compensation, and that such noncompliance precludes an award of attorney's fees and costs. *See In re Ford,* 446 B.R. at 554-555 ("Absent compliance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, a professional has no right to compensation."). Centennial also points out that the Nabavi Debtors' counsel's certification, filed on March 23, 2012, stated that "the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding," but that this was an incorrect statement because an additional fee agreement, which was provided for the first time at the fee hearing, was executed on January 24, 2012, and contained an obligation for both a new retainer agreement for certain services and a contingency fee representation.

The Nabavi Debtors point out that all of the cases cited by Centennial do stand for the proposition that the bankruptcy court requires full disclosure in order for the debtor's counsel to obtain attorney's fees, but *from the bankruptcy estate.* Specifically, these cases involve the failure of a debtor's attorney to comply with Rule 2016(b) and 11 U.S.C. § 329 with respect to that attorney's receipt of payments, or request for payments, from the bankruptcy estate. *See In re Ford*, 446 B.R. 550 (Bankr. M.D. Fla. 2011) (involves attorney's fee applications submitted by the debtor's counsel **to be paid from the estate** in a Chapter 11 bankruptcy); *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844 (10th Cir. 2011) (regarding the debtor's counsel failing to disclose payments he received from the debtors with respect to his application for fees **from the estate** in a Chapter 11 bankruptcy); *In re Becker*, 469 B.R. 121 (Bankr. M.D. Fla. 2012) (addressed an objection by the trustee in a Chapter 13 bankruptcy to the debtor counsel's **application for payment from the estate**); *In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859 (Bankr. M.D. Fla. 2000) (involved a motion to have the Chapter 11 debtor's counsel repay excessive **payments received from the debtor and the estate**); *In re Ostas*, 158 B.R. 312

(Bankr. N.D.N.Y. 1993) (**involved excessive fees paid by the debtors to their counsel** in a Chapter 13 bankruptcy and false statements made in Rule 2016(b) disclosures regarding the amount of payments made by the debtors to their attorneys); *In re Gay*, 390 B.R. 562 (Bankr. D. Md. 2008) (involved an **application for payment from the estate** by a Chapter 11 debtor's counsel who had not disclosed $40,000 in payments received for the representation); *In re Dellutri Law Group*, 482 B.R. 642 (Bankr. M.D. Fla. 2012) (involved violations by a debtor's counsel regarding Chapter 13 "no look" fees in over 2,259 cases during a five (5) year period).

Such disclosures are essential, where payments to counsel come from the debtor or the debtor's estate because "a debtor is in a vulnerable position and is highly dependent upon its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of this . . . [disclosure] is to prevent overreaching by an attorney and provide protection for creditors." *In re Keller*, 248 B.R. at 883 (internal citations and quotations omitted). However, this appeal, the Nabavi Debtors point out, does not involve an application by the Nabavi Debtors' counsel for compensation from the bankruptcy estate, which would reduce the amount available for distribution to the creditors. Rather, such fees will come directly from Centennial as the creditor. The Court agrees. Accordingly, the Bankruptcy Court correctly did not take into account Rule 2016(b) and 11 U.S.C. § 329 when ruling that the Nabavi Debtors were entitled to their prevailing party attorneys' fees against creditor Centennial.

**B.     Whether Any Additional Fee Agreements Encompassed Only Contingent Fees as to Adversarial Proceedings And Not Motions to Dismiss**

Centennial points out that the $3,000.00 flat fee arrangement expressly provides that it includes all matters except "[r]epresentation of debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding." Doc. 10-2 at p. 24. Centennial argues that its Motion to Dismiss was not an adversary proceeding nor a dischargeability action and the Nabavi Debtors were

entitled to representation on Centennial's motion as part of the $3,000.00 they paid to counsel, without any additional fee obligation.

Moreover, the additional attorney fee agreement that was disclosed by the Nabavi Debtors at the fee hearing required a new retainer agreement as to certain post-petition services, and an additional contingency fee to be paid to Debtor's counsel for adversary proceedings. Doc. 10-3 at p. 41-45. However, no new agreement had been executed and, according to Centennial, its Motion to Dismiss does not constitute an adversary proceeding. Doc. 10-5 at p. 45-49. Therefore, the Nabavi Debtors were not obligated to pay for services related to Centennial's Motion to Dismiss, the bank argues. Doc. 10 at p. 17. Additionally, even if there was a new retainer agreement, Centennial avers that the agreement would likely have violated the automatic stay because there was no post-petition court approval of any new retainer agreement. *Id.* at p. 18. As such, no basis for fees exists beyond the flat fee agreement for an attorney fee award, Centennial maintains.

The Nabavi Debtors' counsel argue that the Bankruptcy Court correctly disregarded Centennial's arguments regarding the scope of the Nabavi Debtors' fee agreement with their counsel. The fee agreement states that the Nabavi Debtors and their counsel agreed to represent the Nabavi Debtors in the bankruptcy for a flat $3,000.00 fee, but the agreement contained a broad provision regarding potential additional attorneys' fees that could be incurred beyond the $3,000.00 flat fee as follows:

Additional Attorney's Fees -

. . . There are, however, certain events for which I may need the services of my attorney that may require a new retainer agreement. These events may include my needing my attorney to negotiate with any creditors, resisting any objections filed by my creditors, negotiating reaffirmation agreements, avoiding liens, attending depositions, meetings, examination or hearings, required beyond the first meeting of creditors or filing any Motions or Adversarial Proceedings to enforce the Automatic Stay or Discharge.

Doc. 10-3 at p. 41-45. This additional agreement also limits contingency fee claims to Adversarial Proceedings, stating in pertinent part that:

> . . . I understand that my attorney's typical fee to litigate any matter is $400.00 per hour, but has agreed to under take [sic] certain Adversarial Proceedings as deemed necessary on a contingency fee basis, to which my attorney will be paid a reasonable amount of fees as agreed to separately by the parties or the amount ordered by the Bankruptcy Court.

Doc. 10-3 at p. 41-45. The Nabavi Debtors aver that the Bankruptcy Court correctly awarded them attorneys' fees that were incurred litigating a contested matter – a dispositive matter which constitutes an adversary proceeding – in defending against the Motion to Dismiss because these services fall outside the services included in the $3,000.00 flat fee. Doc. 10-3 at p. 41-45. In support, the Nabavi Debtors point out that, at the conclusion of the hearing on the Motion to Dismiss, the Bankruptcy Court noted that "much of what we've heard today typically would be heard in either an objection to discharge or dischargeability proceeding."

The Nabavi Debtors argue that Centennial intentionally injected itself into the Nabavi Debtors' bankruptcy solely for the purpose of attempting to prevent the deficiency owed to it from being subject to discharge and requested a fee award for doing so in its Motion to Dismiss. Having been defeated, and having seen its deficiency discharged, Centennial now attempts to defeat a valid award of fees supported both by the fee agreement and the Mortgage Agreement.

The Court agrees that Centennial's Motion to Dismiss, though disguised as a challenge to the good faith of the Nabavi Debtors' bankruptcy petition, was actually an attempt by Centennial to prevent its deficiency from being discharged. The Court agrees with the Bankruptcy Court's perspective on the Motion to Dismiss hearing and determines that it was, in essence, a dischargeability proceeding that constituted one of the matters excepted from the Nabavi Debtors' flat fee agreement of $3,000.00.

## C.    Whether Florida Statute § 57.105 Was a Sufficient Basis for an Attorneys' Fees Award

The Bankruptcy Court found that the Mortgage Agreement between Centennial and the Nabavi Debtors encompassed post-judgment proceedings, and thus survived the foreclosure and subsequent

9

merger of the mortgage and state court judgment.  Doc. 1-2.  On that basis, the Bankruptcy Court held

that the reciprocal fee provision in Florida Statute Section 57.105 was a sufficient basis for an attorneys'

fee award.  Centennial avers, however, that this was error because upon entry of the final judgment of

foreclosure, the mortgage merged into the state court judgment, leaving no contract containing a provision

for attorney's fees in existence.

Post-petition attorney's fees must derive from a statute or a contractual provision allowing for such

an award, regardless of whether they are a prevailing party.  *In re Manderson,* 121 B.R. 617 (N.D. Ala.

1990); *In re Martinez,* 416 F. 3d 1286 (11th Cir. 2005).  Specifically, the Bankruptcy Code provides for

the recovery of post-petition fees and costs, but only in certain circumstances.  *In re Electric Machinery*

*Enterprises, Inc.* 371 B.R. 549 (M.D. Fla. 2007).

The Bankruptcy Court and the Nabavi Debtors rely on the reciprocal provision of Florida Statutes

§ 57.105 (7) for support on the basis that Centennial sought fees, in its Motion to Dismiss, under the

subject mortgage.  Specifically, Fla. Stat. §57.105 (7) states, in pertinent part:

> If a contract contains a provision allowing attorney's fees to a party when he or she is
> required to take any action to enforce the contract, the court may also award reasonable
> attorney's fees to the other party when that party prevails in any action, whether plaintiff
> or defendant, with respect to the contract.

Centennial first argues that the Nabavi Debtors cannot rely on this section of the Florida Statute

because Centennial did not assert a claim for fees under the mortgage agreement.  In its Motion to Dismiss,

Centennial avers that it only made a general claim for fees, which was later retracted as an error.

Second, Centennial argues that the Nabavi Debtors cannot seek attorney's fees under the mortgage

agreement because the note and mortgage merged into the foreclosure judgment leaving no contract in

existence at the time the bankruptcy petition was filed pursuant to the merger doctrine.  Under Florida

law, upon foreclosure of a note and mortgage, the mortgage merges into the judgment of foreclosure and

is thereby extinguished.  *See Nack Holdings, LLC v. Kalb*, 13 So. 3d 92, 94 (Fla. 3rd DCA 2009) (citing

*Whitehurst v. Camp*, 699 So. 2d 682 (Fla. 1997)(independent existence terminates upon merger with judgment)); *Weston Orlando Park, Inc. v. Fairwinds Credit Union*, 86 So. 3d 1186, 1187 (Fla. 5th DCA 2012).

Here, Centennial foreclosed on the note and subject mortgage, then obtained a judgment lien two years before the Nabavi Debtors filed for bankruptcy.  Upon entry of the Partial Summary Final Judgment of Foreclosure, Centennial avers, the mortgage and its terms ceased to independently exist and there was no contract on which to base a reciprocal claim for section 57.105(7) attorneys' fees.

The Nabavi Debtors argue that the merger of the Mortgage Agreement into the judgment does not necessarily prevent enforcement of the  attorneys' fee provision in the agreement.  In *In re Mowji*, 228 B.R. 321 (Bankr. M.D. Fla. 1999), the Nabavi Debtors point out, the  Bankruptcy Court granted a debtor entitlement to attorneys' fees pursuant to a contract in a dischargeability proceeding despite the existence of a judgment on the underlying contract.  The Bankruptcy Court rejected the merger argument because the creditor "consistently asserted its rights to attorney's fees in  this  proceeding [so]  it  is  now judicially estopped from asserting a contrary position in this matter."  *Id.* at 324.

The Nabavi Debtors point out that, in  Centennial's Motion  to  Dismiss,  Centennial asserted that it was on the verge of filing its motion for deficiency judgment when the Nabavi Debtors filed for bankruptcy, and that Centennial was the first party to request  "reasonable attorneys' fees and costs" in their Motion  to  Dismiss.  Thus, the Nabavi Debtors' entitlement  to fees, they aver,  arose  from the Mortgage Agreement, which was the  source of the deficiency Centennial sought to protect.   Centennial did not attempt to withdraw or disavow its fee request, until the end of the hearing on its Motion to Dismiss, accusing an  associate  of  including the fee request in the Motion to Dismiss due to a "rookie mistake." Doc. 10-5 at p. 42. The Nabavi Debtors point out that the doctrine of judicial  estoppel, as applied by the bankruptcy court in *Mowji*, prevents Centennial from making such a reversal, citing *In  re Gaye-Joy*

11

*Corp., Inc.*, 84 B.R. 235, 237 (Bankr. M.D. Fla. 1988) (Judicial estoppel "provides that a party is precluded as a matter of law from adopting a legal position which conflicts with an earlier position taken[.] . . . Its purpose is to prevent a party from playing 'fast and loose' with the courts and to protect the integrity of the judicial process."). Thus, despite the merger of the Mortgage Agreement into the state court judgment, Centennial nevertheless exposed itself to a potential adverse fee award by first requesting fees and then failing to timely withdraw its request once placed on notice that the Nabavi Debtors sought fees as well. As such, the Nabavi Debtors argue that the Bankruptcy Court correctly found entitlement to attorneys' fees that they incurred in defending against Centennial's actions, up to and including its Motion to Dismiss.

Centennial attempts to avoid this consequence by arguing that the fee request was a "rookie mistake" by an associate attorney, and that it withdrew the fee request at the end of the hearing on its motion to dismiss. Doc. 10-5 at p. 42. However, Centennial's failure to bring the error to the Court's attention at the beginning of the hearing suggests that the request was only withdrawn because Appellant lost the motion to dismiss. If, as counsel for Appellant claims, she discovered the error while preparing for the hearing, she could have alerted the Court to the error immediately – either by filing a withdrawal on the record or withdrawing the request orally at the very outset of the hearing. There is no legitimate excuse for failing to do this. Accordingly, whether it was a mistake or not, Appellant opened the door to an award of attorneys' fees and cannot close that door just because the fees are being awarded against it. Thus, the reciprocal fee provision in Florida Statute Section 57.105 was a sufficient basis for an attorney's fee award here based on the Mortgage Agreement.

**D.     Whether A Motion To Dismiss A Bankruptcy Petition Can Be Construed As A Debt Collection Action or Action To Enforce A Judgment**

In awarding fees to the Nabavi Debtors' counsel, Centennial argues that the Bankruptcy Court erroneously inferred that Centennial's Motion to Dismiss the bankruptcy petition was the functional equivalent of a "collection of Obligations" as that term is used in Paragraphs 19 and 21 of the Mortgage Agreement.  Doc. 10 at p. 25.  Its Motion to Dismiss, however, is not the same as either a debt collection action or an action to enforce a judgment or judicial lien, Centennial avers.

Paragraph 19 entitled **Collection Expenses**, states in relevant part:

In the event of any action by Bank for collection of the Obligations, for protection of the Property or for foreclosure, Mortgagor agrees to pay all fees and expenses incurred in connection therewith. . . .

Doc. 10-3 at p. 33. Paragraph 21 entitled "**Other Proceedings**" states:

If any action or proceeding is commenced to which bank is made or chooses to become a party by reason of the execution of the Note, this Mortgage, any loan documents or the existence of any Obligations or in which Bank deems it necessary to appear or answer in order to protect its interests, Mortgagor agrees to pay . . . reasonable attorney's fees, paralegal fees, court costs and all other damages and expenses.

*Id.*

Centennial believes these provisions only refer to actions or events that precede a final judgment and do not apply to post-judgment proceedings as required by federal law to constitute an exception to the merger doctrine.  *See In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993).  The Court has rejected Centennial's reliance on the merger doctrine above, and will not address it further here.

Paragraph 2 of the Mortgage Agreement defines "Obligations" as:

a. A Revolving Line of Credit Promissory Note (Note) dated November 7, 2007. . . ;
b. All future advances by Bank to Borrower, to Mortgagor, to any one of them and to any one of them and others (regardless of whether or not this Mortgage is specifically referred to in the evidence of indebtedness. . .;
c. All additional sums advanced, and expenses incurred, by Bank for the purpose of insuring preserving or otherwise protecting the Property and its value, and any other sums advances, and expenses incurred, by Bank pursuant to this Mortgage, plus interest. . .;

13

    d.  All other obligations to the extent the taking of the Collateral as security therefore is not prohibited by law, including but not limited to      liabilities for overdrafts, all advances made by Bank on Borrower's and/or Mortgagor's behalf as authorized by this Mortgage and liabilities as guarantor, endorser, or surety of Borrower to Bank, now existing or hereafter arising, due or to become due. . .;

    e.  Borrower's performance of the terms in the Note and Mortgagor's performance of any terms in this Mortgage. . . .

Doc. 10-3 at p. 28-29. The Nabavi Debtors owed $1.8 million on Centennial's judgment. Centennial argues that because these "obligations" involved only pre-foreclosure performance, and the foreclosure had to have involved an action on these "obligations," there are no other "obligations" that could exist post-foreclosure, Centennial maintains.

       Centennial also avers that the Bankruptcy Court's premise that "the mortgage contemplates post-judgment proceedings" is faulty because actions post-judgment generally include deficiency actions or actions to enforce a judgment such as levy, possession, garnishment, etc.

       Centennial believes that a motion to dismiss based on bad faith in a bankruptcy petition is not a debt collection or enforcement action and the Bankruptcy Court's interpretation that a motion to dismiss is the functional equivalent of a debt collection action cannot be the basis for awarding attorney's fees. In granting the Nabavi Debtors' Motion for Fees, the Bankruptcy Court held that:

> Centennial's participation in this bankruptcy case clearly was an effort to collect upon the Debtors' loan obligations arising from the Note associated with the Mortgage. The only reason Centennial sought to dismiss the bankruptcy case was to prevent the Debtors from discharging the deficiency judgment due it. The prosecution of the motion to dismiss, unquestionably, was an action by the Bank for collection of the Debtors' obligations under the Note. It was also a proceeding to which the Bank voluntarily chose to become a party by reason of the existence of the Note and related loan documents in order to protect its interests.

Doc. 1-2 at p. 3.

       Centennial denies that it sought to dismiss the bankruptcy case "to prevent the Nabavi Debtors from discharging the deficiency due it," as the Bankruptcy Court concluded.  On the contrary, Centennial maintains that it had good reason to believe that the bankruptcy petition had been filed in bad faith.

14

As noted above, the Court agrees that Centennial chose to involve itself in the Nabavi Debtors' bankruptcy because it wanted to protect the debt owed to it and that paragraph 21 of the Mortgage Agreement would have entitled Centennial to recovery of its attorneys' fees incurred in the proceeding. Based upon this entitlement, Centennial requested an award of fees in its Motion to Dismiss. Section 57.105(7) of Florida Statutes makes attorneys' fee provisions reciprocal and the fee award here appropriate.

### E.   Whether the Attorney's Fee Award was Reasonable In Light of the Nabavi Debtors' Flat Fee Agreement Or Because the Attorney's Time Included Matters Not Relevant to the Motion to Dismiss

The Bankruptcy Court awarded the Nabavi Debtors the amount they requested in fees, $15,925.00, finding that the fees were reasonable. Centennial argues that, even if an attorney's fee award were authorized in this case, that amount must be limited to $3,000.00, the value of the flat fee agreement. Centennial further argues that if an additional sum is warranted, that amount must be reduced because the award includes matters that are not relevant to the Motion to Dismiss.

As support, Centennial points to the Affidavit of Attorney's Time the Nabavi Debtors attached to its Motion for Fees, which includes an itemized list of services and costs purportedly related to this case. Centennial avers that many of the fees and costs claimed were unrelated to the Motion to Dismiss.

The Nabavi Debtors urge the Court to disregard Centennial's arguments that some of the attorney's fees are unrelated to the Motion to Dismiss because it failed to raise it first with the Bankruptcy Court. Specifically, Centennial did not raise this issue in its opposition to the Nabavi Debtors' fee motion or during the hearing. Therefore, the Nabavi Debtors aver, Centennial has waived its right to argue this issue on appeal. "Ordinarily an appellate court does not give consideration to issues not raised below" because "bankruptcy cases are to be tried in front of bankruptcy courts." *In re Lett*, 632 F.3d 1216, 1226 (11th Cir. 2011)(citations omitted). The Eleventh Circuit, however, has adopted a

"civil plain error rule" that allows appellate courts to "consider an issue not raised in the [lower] court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Id.* (quoting *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982)). Here, Centennial does not raise a "pure question of law" but rather challenges the Bankruptcy Court's factual determination that all of the time requested by the Debtors related to Centennial's Motion to Dismiss was compensable. Therefore, the "civil plain error rule" does not apply. Having failed to preserve the purported error in the Bankruptcy Court, Centennial is barred from arguing it here.[2]

## IV.   Conclusion

The Bankruptcy Court correctly awarded the Nabavi Debtors attorneys' fees in the amount of $15,925.00 for defending Centennial's attempts to prevent a discharge of the deficiency under the Mortgage Agreement, leading up to and including litigation of Centennial's Motion to Dismiss. Paragraph twenty-one (21) of the Mortgage Agreement, in conjunction with § 57.105(7) of the Florida Statutes, provided the Nabavi Debtors with an entitlement to those attorneys' fees. The merger of the Mortgage Agreement into the state court judgment failed to block the application of the fee provision because Centennial was the first party to seek fees, and failed to withdraw or disavow its fee claim until too late in the process. Additionally, Centennial waived its challenge to the amount of fees, requiring affirmance of the Bankruptcy Court's decision to award the Nabavi Debtors the entire amount requested.

Accordingly, the Bankruptcy Court's order is **AFFIRMED** in its entirety. The Clerk is directed to close this file.

---

[2] Centennial's final argument that the Nabavi Debtors should not recover the fees incurred by their expert witness is moot since the Bankruptcy Court did not award the Nabavi Debtors any fees for their expert, noting in its opinion that the Nabavi Debtors never requested such fees.

**DONE** and **ORDERED** in Orlando, Florida on August 12, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties